```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/28/09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

COLLEEN MCAVEY,

                Plaintiff,         07 Civ. 11181

   -against-                        OPINION

ORANGE-ULSTER BOCES, JEFFREY SMITH,
former Deputy Superintendent,
JAKE MCHALE, Principal of Flannery
High School, and MARGUERITE FLOOD,
Executive Director for Personnel,
sued in their individual capacities,

                Defendants.

------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        SUSSMAN & WATKINS
        P.O. Box 1005
        40 Park Place
        Goshen, New York   10924
        By:   Christopher D. Watkins, Esq.

        Attorneys for Defendants
        Orange-Ulster Boces, Jake
        McHale and Marguerite Flood

        LAMB & BARNOSKY, LLP
        534 Broadhollow Road, Suite 210
        P.O. Box 9034
        Melville, New York   11747-9034
        By:   Sharon N. Berlin, Esq.



**Sweet, D.J.**

The defendants Orange-Ulster Boces ("Boces"), Jake McHale ("McHale") and Marguerite Flood ("Flood") (collectively, the "Defendants") have moved pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss the complaint of plaintiff Colleen McAvey ("McAvey" or the "Plaintiff") alleging retaliation in violation of 42 U.S.C. § 1983 arising from McAvey's exercise of her First Amendment rights. Based upon the conclusions set forth below, the motion is denied.

## I. PRIOR PROCEEDINGS

This case was initiated by the filing of the complaint on December 12, 2007, and was assigned to the Honorable Stephen C. Robinson. Defendants' motion was marked fully submitted on February 13, 2008. On June 5, 2009, the action was reassigned to this Court.

## II. FACTUAL ALLEGATIONS

The following allegations, taken from the Complaint, are accepted as true for the purpose of resolving the motion to dismiss.

Plaintiff has been employed as a social worker by Boces for eleven years. In Fall 2005, McAvey was working as a social worker at Flannery High School ("Flannery").

On September 8, 2005, two ninth grade girls from Ms. A.'s ninth grade Special Education English class reported to McHale, Principal of Flannery, that Ms. A. had made inappropriate comments to D., a 14 year-old boy in their class. According to the girls, Ms. A. told D. that she liked the sound of his voice; that she knew where he lived and would pick him up to take him to church; and had said, "Mmmm, too bad I'm too old to look" when D.'s pants had slid down and he lifted them up. According to the girls, McHale told them that he would "take care of it." Compl. at ¶ 9

On September 9, 2005, the same girls spoke with Plaintiff and reported the same information about Ms. A.'s behavior that they had told McHale the previous day.

When Plaintiff met with D., D. asked Plaintiff if she could get him out of his English class because he thought that Ms. A. wanted to have sex with him. He then described the same type of comments and behaviors the girls had reported. D. told McAvey that the other boys teased him about Ms. A.'s behavior and that the girls thought that he was a "freak." Id. at ¶ 10. McAvey told D. that she would speak with McHale.

Plaintiff then spoke with D.'s homeroom teacher, Ms. Sorice, who was already aware of the comments. Sorice had heard Ms. A. tell D. she was going to pick him up from home and take him to church as D. was boarding his school bus and had reported her own concerns with respect to this behavior to McHale and Flannery's Assistant Principal.

When Plaintiff reported to McHale the allegations regarding Ms. A. and D., McHale said that he had already received the information and would take care of it the following Monday.

On the following Monday, September 12, 2005, McAvey told School Resource Officer David Ramsey ("Ramsey"), a Town of Goshen police officer, of her

concerns about Ms. A.'s comments and behaviors toward D. Plaintiff later heard McHale speak with Ramsey and two other teachers about the situation, and observed Ramsey question D. about Ms. A.

That same day, D. appeared in Plaintiff's office and told her that he could not go to Art class because it was in Ms. A.'s classroom and he was afraid that she would come in to the room. When McAvey informed McHale of D.'s concerns, McHale instructed her to take D. to the Alternative Learning Class. Over the next several days, D. continued to report concerns about Ms. A. to Plaintiff, including that he feared Ms. A. was angry with him for "telling on her," which Plaintiff then reported to McHale. Id. at ¶ 17.

On September 15, 2005, D. came to McAvey's office visibly upset. He told Plaintiff that Ms. A. had refused to allow him to go to the bathroom and had written him up for doing so without permission. Plaintiff first met with D. and Ms. A., then with McHale, who reprimanded D. for ignoring the rules, told him his concerns about Ms. A. were unjustified, accused D. of being manipulative, and directed him to return to Ms. A.'s class.

Later that same day, McHale angrily asked McAvey if she had called D.'s father about the situation with Ms. A. When Plaintiff told McHale she had not, he told her the father had called the Times Herald Record newspaper and reported that the school was covering up sexual abuse.

On September 19, 2005, Ramsey approached Plaintiff and told her he needed to question her about allegations concerning Ms. A. and D. When Plaintiff reminded him they had already discussed her concerns several days earlier, Ramsey denied that such a conversation had taken place.

The next day, on September 20, 2005, Dianna Cahn ("Cahn"), a Times Herald Record reporter, telephoned Plaintiff requesting a comment on a Town of Goshen police report Cahn had obtained concerning Ms. A. and D. When McAvey explained that she did not know about the report, Cahn read it aloud to her.

The report, filed by Ramsey, was false in several respects, including that Ramsey claimed he first learned of any allegations of sexual harassment by Ms. A. on September

5

15, when he was contacted by Cahn. Ramsey also claimed that McAvey had not informed him of Ms. A.'s alleged comments until September 16, 2005, and portrayed Plaintiff as falsely claiming that she had reported her concerns to him earlier. The report included Ramsey's recounting of his interview with D., which further suggested he had not engaged in a good faith investigation of the underlying allegations regarding Ms. A. and D.

In addition to Ramsey's report, Cahn read to McAvey a supporting deposition from McHale, the contents of which were also inaccurate.

On September 21, 2005, concerned about the falsity of Ramsey's report and McHale's supporting deposition, McAvey made a Freedom of Information Law ("FOIL") request of the Goshen Police Department for the report and the supporting deposition. Immediately after she made this request, Town of Goshen Police Chief Marsh ("Marsh") visited Flannery and met with McHale and Ramsey in McHale's office.

On September 22, 2005, McAvey sent an email to then-Boces Superintendent Dr. Robert Hanna describing what

6

had transpired with respect to Ms. A. and D. up until that time.

On September 27, 2005, McAvey received a copy of Ramsey's report from the Goshen Police Department, but not a copy of McHale's supporting deposition. Plaintiff advised Marsh of this and requested McHale's statement pursuant to FOIL. Marsh angrily told Plaintiff to get the paperwork from her school. Thereafter, Plaintiff persisted in asserting her rights under FOIL and advised Goshen Town Supervisor, Honey Bernstein, of her concerns.

On October 7, 2005, McHale left a completed "Confidential Report of Allegation" of "Child Abuse in an Education Setting" for Plaintiff in her mailbox. The form was back-dated to September 8, 2005. McHale left a post-it note stating: "Colleen, Please sign and return." The form briefly described D.'s report about Ms. A. Plaintiff advised McHale that she could not sign the form because it was back-dated.

On October 14, 2005, Smith, Deputy Superintendent of Boces, Flood, Executive Personnel Director, and McHale

met with McAvey and her union representative. During the meeting, Smith yelled at Plaintiff that she was forbidden from going to the police or speaking with a news reporter, and cast aspersions on Plaintiff's professionalism.

Thereafter, Plaintiff received a letter of admonishment from Smith, dated November 8, 2005, which was placed in her personnel file. The letter described Smith's view that, "your reporting such a suspicion [of possible abuse was] the correct thing to be done by a school counselor." Smith continued:

> My concern however, is about your subsequent involvement with the Goshen Town Police and the Times Herald Record. Given the nature of our students, I believe the best course of action for a counselor is to report the issue to his or her school administrator and let the investigation go through its process. I do not believe it is beneficial or appropriate for individual staff members to be involved directly with the police and/or newspapers in instances surrounding student matters.
>
> In the future, should these circumstances arise again, I am directing that you stay in process and work directly with your school administrator.

Aff. of Christopher D. Watkins ("Watkins Aff."), Ex. 1.

Plaintiff alleges that she suffered other adverse actions beyond Smith's letter of reprimand, including denial of a "P.M. Hours" counselor position for which Plaintiff was most qualified; removal as a speaker at a District-side professional conference; hostile treatment from McHale; having her emails opened and forwarded to Flood in an attempt to obtain negative information about her; denial of a summer school counselor position; and involuntary transfer.

### III. THE LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)). However, mere "conclusions of law or unwarranted deductions" need not be accepted. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (quotations and citation omitted).

"'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)). However, "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

## IV. THE COMPLAINT STATES A CAUSE OF ACTION

A plaintiff alleging a First Amendment retaliation claim under § 1983 must show "(1) his speech addressed a matter of public concern; (2) he suffered an

10

adverse employment action; and (3) a causal connection between the speech and the adverse employment action." Singh v. City of New York, 524 F.3d 361, 372 (2d Cir. 2008) (citing Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006)).

Defendants move to dismiss Plaintiff's First Amendment claim on the ground that, pursuant to Garcetti v. Ceballos, 547 U.S. 410 (2006), the statements at issue where made as part of McAvey's official duties as a social worker and therefore are not entitled to constitutional protection. In Garcetti, the plaintiff was a deputy district attorney who wrote an internal memorandum in which he expressed concerns about the accuracy of an affidavit supporting a warrant and recommended dismissal of the underlying criminal case. Neither party disputed that the plaintiff "wrote [the statements at issue] pursuant to his official duties." Id. at 424. The Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 421. While denying such protection to Garcetti, the

11

Court recognized that the First Amendment does protect public employees from retaliatory actions when the employee speaks "as a citizen on a matter of public concern." Id. at 418. The Court identified the official duty inquiry to be the "controlling factor" in determining whether a public employee was entitled to First Amendment retaliation protection, id. at 421, but did not "articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." Id. at 424.

While Plaintiff reported allegations of possible abuse to McHale pursuant to her official job duties as a social worker, her subsequent discussion with a reporter, her FOIL requests and her follow-up communications with the Goshen Police Department and the Goshen Town Supervisor were not made pursuant to her official duties. Rather, as set forth in the complaint, those statements were made to expose and prevent alleged fraud by McHale and Ramsey regarding allegations of potential student abuse and the school's failure to properly investigate such allegations.

12

Defendants contend that the circumstances here are similar to those under which courts have applied Garcetti to limit First Amendment retaliation claims by public school teachers. For example, in Panse v. Eastwood, No. 06 Civ. 6697 (SCR), 2007 WL 2154192 (S.D.N.Y. July 20, 2007), the court held that under Garcetti, the plaintiff, an art teacher who suggested to his students that enrolling in a private art school he was considering establishing would assist them in competing for various art scholarships, was not protected from retaliation under the First Amendment. The court concluded that the teacher's classroom speech was not protected because his official duties included "classroom discussions about the assigned subject, as well as topics such as whether and how to pursue future educational opportunities in that subject area." Id. at *4. Similarly, in Mayer v. Monroe County Cmty. Sch. Corp., 474 F.3d 477, 478 (7th Cir. 2007), an elementary school teacher claimed her First Amendment rights were violated when she was fired for expressing support for peace demonstrators during a classroom discussion on current events. The Plaintiff "concede[d] that the current-events session, conducted during class hours, was part of her official duties." Id. at 479. The court rejected the teacher's argument that "principles of

13

academic freedom" removed her case from the purview of Garcetti, holding that "Garcetti applies directly," as the plaintiff's speech occurred during a "lesson [that] was part of her assigned tasks in the classroom." Id. at 480.

Panse and Mayer can be easily distinguished from the instant case in that they both involved speech between a teacher and his or her students in the classroom environment. The context of McAvey's statements to Cahn and others outside of Flannery, however, is much more analogous to the situation in Pickering v. Bd. of Educ., 391 U.S. 563, 566 (1968), cited approvingly in Garcetti. In Pickering, the Supreme Court held that a teacher's letter to a local newspaper addressing various issues, including school funding policies, was protected by the First Amendment. Id. at 473; see Garcetti, 547 U.S. at 419–20 (approving Pickering Court's characterization of its holding as "rejecting the attempt of school administrators to 'limi[t] teachers' opportunities to contribute to public debate." (citing Pickering, 391 U.S. at 573) (alteration in original)). Here, McAvey's communications with a reporter, the police and various town officials involved a matter of public concern, namely a failure of school officials to

14

appropriately investigate and respond to serious allegations made by a student.

McAvey's official job duties cannot be said to include "scrutinize[ing] her supervisors for fraud — essentially acting as a supervisor of her supervisors — let alone report[ing] them to external investigators." Rosenblatt v. City of New York, No. 05 Civ. 5521 (GEL), 2007 WL 2197835, at *6 (S.D.N.Y. July 31, 2007) (emphasis in original); Weintraub v. Bd. of Educ., 489 F. Supp. 2d 209, 219 (E.D.N.Y. 2007) (describing "general principle" under Garcetti as "when a public employees . . . expresses concern about misconduct[] to his or her immediate supervisor or pursuant to a clear duty to report imposed by law or employer policy, he or she is speaking as an employee and not as a citizen," whereas where "the employee goes outside of the established institutional channels in order to express a complaint or concern, the employee is speaking as a citizen, and the speech is protected by the First Amendment"). Indeed, Smith's letter of reprimand indicates that it was McAvey's statements to those outside the school district, not her reporting of the abuse allegations internally, that resulted in Defendants'

15

alleged retaliation. In his letter, Smith admonished Plaintiff for "being involved directly with the police and/or newspapers," and warned her to confine her communications regarding "student matters" to her school administrator. Watkins Aff., Ex. 1. In so doing, Smith appears to be reprimanding McAvey for acting outside the boundaries of her official duties.

Plaintiff has sufficiently alleged that Defendants retaliated against her for statements that she made in an attempt to shed light on what she determined to be fraud and misstatements made by school officials in relation to the incident described above. Accordingly, her communications were not made in connection with her official duties and she is entitled to First Amendment protection as a citizen speaking on a matter of public concern.

**V.   CONCLUSION**

16

Based on the conclusions above, Defendants' motion to dismiss is denied.

It is so ordered.

New York, NY
August 2♪, 2009

ROBERT W. SWEET
U.S.D.J.