UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

COLLEEN MCAVEY,

                       Plaintiff,               07 Civ. 11181

   -against-                             OPINION

ORANGE-ULSTER BOCES, JEFFREY SMITH,
former Deputy Superintendent, JAKE
MCHALE, Principal of Flannery High
School, and MARGUERITE FLOOD,
Executive Director for Personnel,
sued in their individual capacities,

                       Defendants.

-----------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        SUSSMAN & WATKINS
        55 Park Place, Suite 6
        P.O. Box 1005
        Goshen, New York 10924
        By:  Christopher D. Watkins, Esq.

        Attorneys for Defendants

        LAMB & BARNOSKY, LLP
        534 Broadhollow Road, Ste. 210
        P.O. Box 9034
        Melville, New York 11747-9034



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8|15|11

**Sweet, D.J.**

Defendants Orange-Ulster Board of Cooperative Educational Services ("BOCES"), Jeffrey Smith ("Smith"), Jake McHale ("McHale") and Marguerite Flood ("Flood") (collectively, the "Defendants") have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of the complaint of the plaintiff Colleen McAvey ("McAvey" or the "Plaintiff").  Based upon the facts and conclusions set forth below, the motion is denied in part and granted in part.

I.   **Prior Proceedings**

McAvey filed her complaint on December 12, 2007, alleging that the Defendants retaliated against her for exercising her First Amendment rights when they (1) admonished her (both verbally and in writing); (2) denied her a position in BOCES's P.M. hours program; (3) removed her as a presenter at a BOCES professional conference; (4) failed to discipline employees for making derogatory remarks about her; (5) reviewed her emails; (6) denied her a 2006 summer school position; and

1

(7) transferred her in December 2006.  <u>See</u> Complaint at ¶¶ 36-46.

The action was assigned to this court on June 6, 2009. The Defendants' Rule 12(b)(6) motion was denied by an opinion of August 28, 2009 (the "August 28 Opinion").

The instant motion was heard on March 30, 2011.

## II.  **The Facts**

The Defendants have submitted their Statement of Material Facts pursuant to Local Rule 56.1, McAvey has submitted her Rule 56.1 Reply and Counterstatement, and the Defendants have submitted the Reply Declaration of Sharon N. Berlin.  The following facts have been established by these submissions and are not in dispute except as noted below.

McAvey has a Master's Degree in Social Work from Fordham University, is licensed as a social worker by the State of New York, and has been employed by Orange-Ulster BOCES as a social worker since 1998.

2

In her position as a school social worker, McAvey is assigned students and meets with them to focus on their social and emotional needs as set forth in each student's individualized education plan.  It is her responsibility to document her meetings with students, coordinate with parents and other school employees regarding her assigned students' needs, and to serve as a crisis counselor as necessary.

Smith was BOCES's Deputy Superintendent at all times pertinent hereto until his resignation, effective September 30, 2006.  McHale was the Principal of BOCES's John A. Flannery High School from approximately 1989 until March 2009.  As Principal, McHale held supervisory authority over social workers assigned to Flannery High School, including Plaintiff while she was assigned there.

Flood has been BOCES's Assistant Superintendent for Human Resources since October 2006.  Prior to October 2006, Flood was BOCES's Executive Director of Personnel.

During the 2005-2006 school year, Plaintiff was assigned to Flannery High School.

3

During their regularly scheduled counseling session on Friday, September 9, 2005, two female students advised Plaintiff that they had witnessed inappropriate behavior on the part of a teacher, Ms. A, towards a male student, D.A.  The two female students told Plaintiff that they had already spoken to McHale and their homeroom teacher, Ms. Sorice ("Sorice"), on September 8, 2005 about this behavior.  D.A. was Plaintiff's next scheduled counseling session after the two female students on September 9, 2005.

During the course of his counseling session, D.A. complained that Ms. A had touched him, rubbed his back, followed him to the bathroom, looked at him inappropriately, and yelled that she would see him over the weekend in front of other students.  According to the Plaintiff, Ms. A's conduct suggested a sexual interest in D.A.  At the end of D.A.'s session, Plaintiff told D.A. that she was going to report Ms. A's conduct to McHale.  D.A. requested that he be removed from Ms. A's class.

As of September 9, 2005, Plaintiff understood that pursuant to New York State law she was required to report any allegation of child abuse in the school to her immediate

4

supervisor, McHale.  Plaintiff did not prepare a written report in connection with D.A.'s complaint.

After her session with D.A., Plaintiff mentioned to Sorice that a situation between D.A. and Ms. A had come up in the counseling session and told Sorice that she would be speaking with McHale about it.  Sorice said that she was already aware of the situation.

After speaking with Sorice, Plaintiff went to McHale's office to speak with him about D.A.'s complaint.  McHale was not in his office, and Plaintiff began to tell Nancy Tambini Wall ("Wall"), the administration intern at the time, about the complaint.  Approximately five minutes later, McHale came back to his office, at which time Wall asked him to enter her office.

Plaintiff then explained what she had learned to McHale and Wall.  McHale told Plaintiff that he already knew about the situation because the same two female students had brought it to his attention the day before and advised Plaintiff that he would handle the situation on Monday, September 12, 2005.  McHale testified that commencing on Monday, September 12,

2005, he investigated the allegations stated by D.A. to
Plaintiff.

On September 12, 2005, Plaintiff alleges that she told
the Student Resource Officer, David Ramsey ("Ramsey") during a
conversation they had in the hallway that Ms. A had been
sexually abusing D.A.  Ramsey is a Goshen police officer who was
assigned to Flannery High School.  During their conversation,
Plaintiff did not ask Ramsey to do anything about the complaint.

Plaintiff has alleged that she told McHale that same
day that she had spoken with Ramsey.  Later Plaintiff observed
McHale speaking with Ramsey and Ramsey questioning D.A.

Also on September 12, 2005, D.A. came to Plaintiff's
office and asked to be removed from Ms. A's classroom.
Plaintiff told D.A. that she would speak with McHale about that
possibility, which she did later that day.

That same day, D.A. again came to Plaintiff's office
and stated that he did not want to return to Ms. A's class.
Less than a minute after D.A. arrived, Ms. A also came into
Plaintiff's office stating that D.A. was supposed to be in her

class.  Plaintiff, D.A. and Ms. A all went to McHale's office to discuss the situation.  During this meeting, McHale told D.A. that he believed D.A. was attempting to manipulate the situation to secure a transfer out of Ms. A's class and directed D.A. to return to Ms. A's classroom.

D.A. was hospitalized and left the school shortly thereafter.

Approximately one or two days later, Plaintiff alleges that McHale came to her office and asked if she had contacted D.A.'s father and further stated that someone had contacted the Times Herald Record (the local newspaper) claiming that the school was covering up an abuse allegation.  Plaintiff denied having spoken with D.A.'s father.

According to the Defendants, on September 16, 2005, Ramsey approached Plaintiff and advised that he was doing an investigation into an allegation of child abuse.  According to the Plaintiff, the conversation took place on September 19, 2005.  Plaintiff told Ramsey that they had already spoken about the allegation the week prior, which Ramsey denied.  Plaintiff then recounted the details of D.A.'s complaint to Ramsey.

7

On September 20, 2005, Times Herald Record Reporter Dianna Cahn ("Cahn") contacted Plaintiff at her home and asked Plaintiff if she was aware of the existence of a police report regarding child abuse allegations at BOCES, which Plaintiff denied.  Cahn also told Plaintiff that she had spoken with Ramsey, that Plaintiff's name appears in the report, and that she could read it to her.  Cahn then read the report to Plaintiff.  After reading the report to Plaintiff, Cahn asked for Plaintiff's comments.  Plaintiff declined to comment. Nothing about Plaintiff's conversation with Cahn was published in the media.

Plaintiff again spoke with Cahn on September 21, 2005 and said that she could not comment on the police report because she had been denied a copy of it.

Plaintiff went to the Goshen police station at 7:00 a.m. on September 21, 2005 to obtain a copy of the police report and told Police Chief Marsh ("Marsh") that she would like to see a copy of the police report containing her name and that a copy had been given to the Times Herald.  Marsh directed Plaintiff to

8

file a request for the report pursuant to the Freedom of
Information Law ("FOIL"), which she did that same day.

On September 22, 2005, Cahn left a telephone message
for Plaintiff at Flannery High School.  Also on September 22,
2005, Plaintiff prepared a summary of the events surrounding
D.A.'s complaint which did not explicitly mention any alleged
inappropriate touching.

On September 23, 2005, Plaintiff advised McHale and
then District Superintendent Dr. Robert Hanna ("Hanna") that she
had received a telephone message from Cahn.  Hanna sent
Plaintiff an email in which he told her that she did not have to
return the call and that all media contacts were to be directed
to the Superintendent's office.

On September 23, 2005, McHale sent Plaintiff a
memorandum stating that "[a]ll matters relating to newspaper
coverage are handled by the BOCES Central Administration."

On or about September 28, Plaintiff received a copy of
Ramsey's report.  According to Plaintiff, the report, filed by
Ramsey, was false in several respects, including that Ramsey

claimed he first learned of any allegations of sexual harassment by Ms. A on September 15, when he was contacted by newspaper reporter Cahn, and that the Plaintiff did not tell him about Ms. A's alleged comments until September 16, 2005.  Plaintiff claims that Ramsey also portrayed her as falsely claiming that she had earlier reported such concerns to him.  Plaintiff believed that she had not received everything that she had requested and again contacted Marsh.  Marsh directed Plaintiff to BOCES administration.

Plaintiff contacted the Town of Goshen Supervisor, Honey Bernstein ("Bernstein"), to raise a complaint about the Goshen Police Department's handling of her FOIL request and to assert that there were factual inaccuracies in the report that Ramsey had filed.  Plaintiff subsequently received a copy of a "Supporting Deposition" signed by McHale from the Goshen Police Department.  According to Plaintiff, she complained to Bernstein about the fact that McHale's supporting deposition had not been provided initially and that Ramsey's report contained fabrications.

Plaintiff did not tell any BOCES personnel that she had made the FOIL request.

10

Marsh and Ramsey asked McHale why Plaintiff had requested a copy of the report. According to Defendants, McHale stated that he was not sure but that Plaintiff had the right to do so. According to Plaintiff, his testimony was unclear as to whether such a statement was made or was his unstated view. McHale never spoke with Plaintiff about her request for the police report.

On or about October 7, 2005, McHale asked Plaintiff to sign a "Confidential Report of Allegation" form regarding D.A.'s complaint. Plaintiff refused to sign the form because she believed that the date on the document was inaccurate.

On October 14, 2005, Plaintiff was present for a meeting in Smith's office. Present were Smith, Flood, McHale, Linda Vaughn ("Vaughn"), BOCES's then Director of Special Education, and Plaintiff's union representative, John Zwick ("Zwick"). Prior to the meeting, Smith was aware that Plaintiff had requested a copy of Ramsey's report from the Goshen Police Department. During the meeting, Smith told Plaintiff that reporting D.A.'s complaint to McHale was the appropriate thing to do. Plaintiff alleges that during this meeting, Smith called

11

her unprofessional and further stated that she had no right to
speak with the police or the newspaper.  Plaintiff also alleges
that during this meeting she was told by Smith not to speak with
the Goshen Police Department or the Times Herald Record for any
reason.  Plaintiff stated for the first time during the meeting
that Cahn had contacted her at home about D.A.'s complaint.
Neither Flood nor McHale said anything to Plaintiff during the
meeting.

Smith prepared a follow up letter to Plaintiff, dated
November 8, 2005 (the "November 8 Letter"), concerning the
issues discussed at the October 14, 2005 meeting.  The November
8 Letter was sent to Plaintiff, placed in her personnel file,
and distributed to several people.

During the fall 2005, BOCES was seeking to fill a
counselor position in its after-school program (also known as
the P.M. hours program).  Plaintiff emailed McHale to indicate
that she was interested in the position.

Plaintiff was not offered the position.  According to
Defendants, the denial was due to overall concerns about her
work performance at the time.  According to Plaintiff, McHale,

12

as Principal, would ordinarily make the recommendation for such a position, and his recommendation was typically followed. In June 2008, after Plaintiff filed this lawsuit, McHale prepared a memo about the decision for the fall 2005 P.M. hours counselor position. According to McHale, Smith directed him not to consider Plaintiff for that position. Smith had never before made such a direction about a part-time position. According to McHale, Smith cited unspecified "performance concerns" for his direction not to consider Plaintiff. Smith, as Deputy Superintendent, had no direct supervisory authority or contact with Plaintiff and was not involved at all in her supervision. Smith testified that he would not get directly involved, as Deputy Superintendent, in the decision-making process regarding the filling of routine counseling positions, including an after-school part-time counselor position.

Katerina Farganis ("Farganis"), a crisis counselor at Flannery High School, also applied for the position, was less experienced, and received the position.

As noted above, McHale's recommendations for whom to hire were usually followed, though final decisions for hiring were made at that time by Vaughn and BOCES's Central

13

Administration.  Flood did not have any input into the decision
not to hire Plaintiff for this position.

During the fall 2005, Plaintiff was asked to be a
presenter at a professional conference offered by BOCES to its
staff.  Plaintiff alleges that she told McHale that she was
going to be a presenter at the conference.

Approximately one day later, Plaintiff alleges that
she received an email from Dr. Mary Ann Wilson ("Wilson"), the
Assistant Superintendent for Curriculum and Instruction,
advising her that her presentation would no longer be offered at
the conference because "audiences interested in your and other
similarly interesting topics" would be stretched "too thin."

Plaintiff believes that Wilson was told not to allow
Plaintiff to be a presenter, but she admits that she has no
proof that such a direction was ever given to Wilson.  According
to Plaintiff, on October 5, the coordinator, Leah Fitzgerald
("Fitzgerald"), wrote to Plaintiff that her presentation outline
"looks terrific."  Plaintiff then advised McHale that she was
going to be presenting at the conference.  Shortly thereafter,

14

Fitzgerald told Plaintiff that she would not be presenting at the conference, which was later confirmed through an email.

McHale testified that he had no problem with Plaintiff being a presenter at the conference.  The testimony was challenged by Plaintiff as that of an interested party.

Flood was not involved in determining who would or would not present at the conference.

Plaintiff alleges that McHale was present but did not address derogatory remarks made by three co-workers about Plaintiff's weight.  Plaintiff did not report the comments to McHale or any other BOCES administrator because, according to Plaintiff, McHale was present.  According to Defendants, McHale was not aware that any derogatory remarks were made about Plaintiff's appearance by her co-workers; this is denied by Plaintiff.

Plaintiff alleges that Farganis made other derogatory remarks about her, but Plaintiff never reported them to any BOCES administrator.

15

In or about April 2006, Vaughn advised Flood that
there were concerns that Plaintiff was not picking up students
from classrooms as scheduled because she was engaged in outside
business on her BOCES-issued computer.

Flood then directed Jedd Jacke, an employee in BOCES's
Technical Services Department, to download specified emails from
Plaintiff's account and bring them to Flood for review.
According to Plaintiff, Flood's testimony as to the reason for
the surveillance was unclear.

On April 24, 2006, Plaintiff sent an email to Smith
regarding the November 8 Letter.

On May 11, 2006, Plaintiff requested that she be
permitted to address the D.A. complaint and its handling with
Hanna and BOCES's Board of Education.  Hanna referred Plaintiff
to Flood and Zwick.

On May 18, 2006, Plaintiff met with Flood, McHale,
Kerri Stroka, BOCES's new Director of Special Education, and
Zwick to address her concerns.  During this meeting, Flood told
Plaintiff that while an investigation involving a student is

16

ongoing, Plaintiff should refrain from going to the police or media, but that after the investigation is complete, she was free to do so if she felt it necessary.

On or about May 25, 2006, BOCES received a handwritten letter from Plaintiff addressed to the Members of BOCES's Board of Education detailing her complaints regarding the handling of D.A.'s complaint.

On July 12, 2006, Plaintiff sent a letter to BOCES's Board of Education rebutting the November 8 Letter.

Plaintiff applied for, but did not receive, a position in BOCES's summer school program for the summer of 2006. Subsequently, Plaintiff worked in the summer school program during 2007, 2008 and 2009. Plaintiff was told that the reason she was denied the position was the fact that the summer school program did not include high school students and BOCES was staffing the program with staff members who were familiar with the student populations in the summer school program. According to the Defendants, other than the "general tone" of the school year, Plaintiff has no reason to doubt the veracity of the reason given for denying her the summer school position.

17

According to the Plaintiff, Plaintiff had experience working
with the student populations who would attend summer school and
had worked as a summer school counselor for several years prior
to 2006.

None of the high school social workers were given
summer school positions in 2006.

Plaintiff also alleges that she sought additional
hours performing intake interviews during the summer of 2006.
Of the six high school counselors on staff at the time, only two
were given the additional hours doing intake interviews.
Plaintiff does not know who was responsible for making the
decision regarding these additional hours.

McHale was not involved in the filling of any summer
school positions.  According to Plaintiff, there is an inference
that Smith and Flood were involved because of their prior
involvement.

In December 2006, McHale sent a memo requesting
Plaintiff's transfer from Flannery High School.  According to
the Defendants, at the time of McHale's request, Plaintiff had

18

been having conflicts with co-workers: there was at least one
instance where Plaintiff had openly disagreed with a decision
McHale made about a student matter, there were parent complaints
about Plaintiff, and Plaintiff herself expressed a desire to
transfer to a different BOCES program, all of which lead McHale
to request the transfer. According to Plaintiff, these issues
were not discussed with her, and Plaintiff was highly regarded
by the Defendants based upon evaluations made in 2000.

Plaintiff was later advised by Zwick that she was
being transferred from her position at Flannery High School to a
social worker position at a BOCES proram at the Chester Learning
Academy.

According to Defendants, Zwick did not explain the
reason(s) for the transfer, nor did Plaintiff inquire about the
reason(s) during their conversation, an allegation Plaintiff has
denied.

The transfer took place a few days after Plaintiff had
reported a co-worker for stating that she would bring a weapon
to school.

19

## III. **The Summary Judgment Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party must establish the absence of issues of material fact, at which point the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), and must present such evidence that would allow a jury to find in his favor in order to defeat the motion, Graham v. Long Island Rail Road, 230 F.3d 34, 38 (2d Cir. 2000).  In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations and quotation marks omitted); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non moving

20

party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d
Cir. 2002). See also Sologub v. City of New York, 202 F.3d 175,
178 (2d Cir. 2000) (find that when reasonable persons, applying
the proper legal standards, could differ in their responses to
the questions raised on the basis of the evidence presented, the
question is best left to the jury). However, "[w]hen opposing
parties tell two different stories, one of which is blatantly
contradicted by the record, so that no reasonable jury could
believe it, a court should not adopt that version of the facts
for purposes of ruling on a motion for summary judgment." Scott
v. Harris, 550 U.S. 372, 381 (2007).

When deciding a motion for summary judgment, a court
must remain mindful of the fact that summary judgment is "an
extreme remedy, cutting off the rights of the non-moving party
to present a case to the jury." H & M Hennes & Mauritz LP v.
Skanska USA Bldg., Inc., 617 F. Supp. 2d 152, 155 (E.D.N.Y.
2008).

**IV. The Motion to Dismiss the Claim of Retaliation with Respect
to the Denial of the Part-Time Counselor Position is
Denied**

In order to state a retaliation claim, a private citizen must show: "(1) [she] has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [her] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [her] First Amendment right." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).

### a. Plaintiff's FOIL Request Was Protected Speech

The August 28 Opinion held that Plaintiff was engaged in protected expression.

> Plaintiff has sufficiently alleged that Defendants retaliated against her for statements that she made in an attempt to shed light on what she determined to be fraud and misstatements by school officials in relation to the incident described above [Ms. A's alleged conduct toward student "D.A."].

McAvey v. Orange-Ulster BOCES, No. 07 Civ. 11181, 2009 WL 2744745, at *5 (S.D.N.Y. Aug. 28, 2009). The Court noted in Garcetti v. Ceballos, 547 U.S. 410, 421 (2006), which held that public employee speech made pursuant to an employee's official job duties is not protected by the First Amendment even if it otherwise touches on a matter of public concern, its approval of its prior decision in Pickering v. Board of Education, 391 U.S.

22

563, 573 (1968).  See McAvey, 2009 WL 2744745, at *5 (citing

Garcetti, 547 U.S. at 419-20).  In Pickering, the Court

held that a teacher's letter to a local newspaper addressing

various issues, including school funding policies, was protected

by the First Amendment.  391 U.S. at 473.  The Court was

concerned that holding otherwise would allow school

administrators to "limi[t] teachers' opportunities to contribute

to public debate."  Id. at 573.


      The Second Circuit's decision in Weintraub v. Board of

Education, 593 F.3d 196 (2d Cir. 2010) came after Garcetti.  In

Weintraub, the Court held that a teacher's union grievance about

his supervisor's failure to discipline a student was made

pursuant to his official duties and not as a citizen, and thus

it was not protected by the First Amendment.  593 F.3d at 203-

04.  The court emphasized that its decision was "supported by

the fact that his speech ultimately took the form of an employee

grievance, for which there is no relevant citizen analogue."

Id. at 203.


      Here, McAvey's FOIL request to the Goshen police

department constituted citizen speech.  Moreover, unlike an

employee grievance, such speech was wholly distinct from the

23

Plaintiff's job duties.  As this court previously noted,
Plaintiff's communications with the police department were much
more similar to the letter to a newspaper in Pickering than the
employee's internal memorandum in Garcetti or the employee
grievance in Weintraub.[1]

McAvey engaged in the speech at issue here (the FOIL
request) in her role as a citizen, as opposed to her role as a
public employee, and that speech is protected against
retaliation by the First Amendment.

### b. The Denial of Plaintiff's Application for the After Hours Counseling Position May Have Been Causally Connected to Her Protected Speech

While the October 14, 2005 meeting and November 8
Letter do not constitute actionable retaliation themselves for
reasons described below, Smith's written and verbal
admonishments constitute evidence of his retaliatory animus.
See Mandell v. County of Suffolk, 316 F.3d 368, 383 (2d Cir.
2003) ("'Causation can be established either indirectly by means
of circumstantial evidence, for example, by showing that the

---

[1] In contrast, Plaintiff's internal complaints to her supervisors and the
BOCES Board are more akin to the speech in Weintraub and Garcetti and are not
afforded First Amendment protection.

protected activity was followed by adverse treatment in
employment, or directly by evidence of retaliatory animus'")
(quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)).
Like discrimination, direct evidence of retaliation may consist
of "'conduct or statements by persons involved in the decision-
making process that may be viewed as directly reflecting the
alleged [retaliatory] attitude.'" Lightfoot v. Union Carbide
Corp., 110 F.3d 898, 913 (2d Cir. 1997) (quoting Ostrowski v.
Atlantic Mut. Ins. Cos., 968 F.2d 171, 182 (2d Cir. 1992)).


        Although Smith had no direct supervisory contact with
McAvey and, according to him, would never be directly involved
in decision-making concerning the part-time counseling position,
according to McHale, Smith directed McHale not to consider
Plaintiff for the position.  McAvey was not considered for the
position, and it was given to a less experienced counselor.  At
the very least, a factual issue has been presented with respect
to Smith's role and intention.  Smith's alleged reliance on
"performance concerns" does not alter the conclusion that a
factual issue has been presented.


        The denial of the part-time counseling position was in
close temporal proximity to McAvey's exercise of her First

25

Amendment rights.  See Kaytor v. Elec. Boat Corp., 609 F.3d 537,
552 (2d Cir. 2010) ("Close temporal proximity between the
plaintiff's protected activity and the employer's adverse
employment action may in itself be sufficient to establish the
requisite causal connection between a protected activity and and
retaliatory action").

        Whether the denial of a part-time position to
Plaintiff chilled the exercise of her First Amendment rights is
an unresolved issue of fact to be determined at trial.

        Since Flood had not been shown to have participated in
these decisions, the claim against him is dismissed.  The issue
of a retaliatory denial requires a factual resolution by trial,
and summary judgment is denied as to this retaliation claim.

**V.    The Motion to Dismiss the Remaining Retaliation Claims is
        Granted**

   **a. Plaintiff's "Conversations" with Cahn Were Not Protected
       Speech**

        The Plaintiff has not established that she engaged in
protected First Amendment activity based upon her
"conversations" with Cahn because no actual conversation took

place. To establish a viable First Amendment retaliation claim, Plaintiff must have actually engaged in protected speech. <u>See</u> <u>Frisenda v. Incorporated Village of Malverne</u>, No. 08 Civ. 4198, 2011 WL 1227774, at *16 (E.D.N.Y. Mar. 31, 2011). It follows that where a plaintiff does not actually engage in protected speech, there is no First Amendment retaliation claim. <u>See</u> <u>Id.</u>

Cahn contacted Plaintiff on September 20, 2005. During this "conversation," Cahn read a report to Plaintiff, who declined to comment. Plaintiff said nothing else during this conversation. The following day, Plaintiff again offered no comment to Cahn. Plaintiff never returned Cahn's September 22, 2005 telephone message. Thus, at no point during any of her purported conversations with Cahn did Plaintiff actually make any statement, including a statement about a matter of public concern. In the absence of any actual statement to Cahn, Plaintiff cannot maintain a First Amendment retaliation claim. <u>See</u> <u>McCusker v. City of Atlantic City</u>, 959 F. Supp. 669, 673 (D.N.J. 1996) (where plaintiffs did not testify or make any statements during trial, mere attendance was not constitutionally protected speech).

27

Even if Plaintiff had engaged in an actual conversation with Cahn, her conversation would still not be constitutionally protected.  There is no dispute that Plaintiff, as a school social worker, was required pursuant to New York Education Law § 1126 to report any allegation of child abuse. Plaintiff orally reported at least some of the allegations levied against Ms. A to McHale on September 9, 2005 and further spoke in detail with Ramsey about the allegations on or about September 16, 2005.  Ramsey conveyed the details of this conversation in a report he filed with the Goshen Police Department.

When Cahn initiated contact with Plaintiff on September 20, 2005, she did so because Plaintiff worked for BOCES as a social worker and, in that capacity, was involved with the student's allegations.  Plaintiff's name appeared in the police report solely because of her role in reporting D.A.'s allegations.  As set forth first in Garcetti and then reaffirmed in Weintraub, speech that owes its existence to one's position as a public employee is speech engaged in "pursuant to" one employee duties and is, therefore, not constitutionally protected.  See Weintraub, 593 F.3d at 201 (citing Garcetti, 547 U.S. at 421).

28

**b. The October 14, 2005 Meeting and November 8 Letter Are Not Causally Connected to Plaintiff's Protected Speech and Do Not Constitute Adverse Employment Actions**

The question with regard to causation is whether it was the exercise of Plaintiff's First Amendment rights that caused the Defendants' adverse action. See Conte v. County of Nassau, No. 06 Civ. 4746, 2010 WL 3924677, at *23 (E.D.N.Y. Sept. 30, 2010). Plaintiff has not established a causal link between her FOIL request, which is constitutionally protected speech, and the reprimands that she received during the October 14, 2005 meeting and in the November 8 Letter. See Davis v. Chapple, No. 07 Civ. 321, 2010 WL 985763, at *4 (N.D.N.Y. Mar. 16, 2010) (dismissing First Amendment retaliation claim where plaintiff did not provide evidence establishing that adverse action was motivated by his protected speech). Rather, these admonishments were related to her contact with the press, confidentiality concerns, and other conduct, not including the FOIL request. Plaintiff has also failed to establish that the October 14, 2005 meeting and November 8 Letter were adverse employment actions.

The November 8 Letter states: "let me reiterate that I find your reporting such a suspicion the correct thing to be

29

done by a school counselor."  Plaintiff was admonished by Smith

during the October 14, 2005 meeting and in the November 8 Letter

for failing to stay within the "process" utilized by BOCES

pursuant to state and federal law.  Education Law § 1127

embodies New York State policy that reports of abuse in an

educational setting remain confidential, making it is a

misdemeanor offense for a school official to disclose the

contents of a written report of abuse.  Moreover, the Family

Educational Rights and Privacy Act, 20 U.S.C. §§ 1232g, 1232h

("FERPA"), protected D.A.'s confidentiality rights in his

educational records.  No evidence presented suggests that the

Defendants' concerns and admonishments arose from Plaintiff's

FOIL request, which sought a report already in the possession of

the local newspaper.  See Thomas v. iStar Financial, Inc., 438

F. Supp. 2d 348, 366 (S.D.N.Y. 2006) (retaliation claim

dismissed where plaintiff failed to connect protected speech to

reprimands).


        Also, Plaintiff has not demonstrated that the meeting

and the November 8 Letter constituted a damaging adverse

employment action.  "[T]he proper legal test in determining

whether an employment action is adverse in First

Amendment retaliation cases is whether the alleged acts would

30

deter a similarly situated individual of ordinary firmness from
exercising his or her constitutional rights." Dillon v.
Morano, 497 F.3d 247, 254 (2d Cir. 2007) (internal quotation
marks omitted).  The reprimands and admonishments Plaintiff was
subjected to in the October 14, 2005 meeting and November 8
letter do not meet this standard.  See Nix v. Cino, No. 02 Civ.
4609, 2006 WL 2711625, at *5 (E.D.N.Y. Sept. 21, 2006) ("Mere
reprimands or threats of disciplinary action, absent any other
negative results, such as a decrease in pay, do not qualify as
adverse employment actions."); Stembridge v. City of New
York, 88 F. Supp. 2d 276, 283 (S.D.N.Y. 2000) (in Title VII
context, where a plaintiff failed to show that reprimand had "a
cognizable or material impact on the terms or conditions of his
employment," he had not established an adverse employment
action); Palmer-Williams v. Yale New Haven Hosp., No. 08 Civ.
1526, 2011 WL 1226022, at *10 (D.Conn. Mar. 27, 2011)
("reprimands and negative performance evaluations are not, in
and of themselves, materially adverse, to the point at which
they would dissuade a reasonable employee from engaging in
protected activity") (citing cases); Lucenti v. Potter, 432 F.
Supp. 2d 347, 364 (S.D.N.Y. 2006) ("Reprimands, threats of
disciplinary action, and excessive scrutiny do not constitute
adverse employment actions."); Cody v. County of Nassau, 577 F.

Supp. 2d 623, 645-46 (E.D.N.Y. 2008) (finding various
reprimands, hours changes, and threats of discipline to be
insufficient to establish adverse employment action).

### c. Plaintiff's Removal as a Conference Presenter Was Not Causally Connected to Her Protected Speech

The only evidence relating Plaintiff's removal the
speaking roster at a BOCES professional conference in October
2005 was the statement of the conference coordinator that there
were too many offerings at the conference and audiences would be
spread "too thin."  Speculation that this articulated reason is
false does not constitute grounds for a claim of retaliation.

Although Plaintiff claims that she told McHale that
she would be a speaker at the conference, she has presented no
evidence suggesting that McHale, Smith, Flood, or any BOCES
administrator directed Wilson to remove Plaintiff's
presentation.  Moreover, McHale had "no problem" with Plaintiff
being a presenter at the conference, and Flood was not even
involved with the conference.

In addition, Plaintiff has not presented any evidence
that the decision not to have her as a presenter constituted an
adverse employment action.

### d. McHale's Alleged Failure to Punish Plaintiff's Co-workers for Derogatory Remarks Does Not Establish a Retaliation Claim

Plaintiff did not report the allegedly derogatory
comments made by her co-workers to McHale or any other BOCES
administrator.  McHale did not discipline these co-workers.
McHale contends that he was not aware that derogatory remarks
were made about Plaintiff, although Plaintiff has alleged that
he was present when the remarks were made.  Despite that factual
issue, failure to discipline co-workers has not been established
to constitute retaliation and cannot form the basis of a
retaliation claim.  See Wilburn v. Eastman Kodak Corp., 670 F.
Supp. 2d 192, 196 (W.D.N.Y. 2009) (finding that racist,
offensive graffiti written by co-workers was not "so ubiquitous,
severe or pervasive as to create an actionable hostile work
environment.")  See also Smith v. New Venture Gear, Inc., 319
Fed. Appx. 52, 57 (2d Cir. 2009) (district court was correct in
granting summary judgment for employer on employee's hostile
work environment claim, since, "[e]ven viewed in a light most
favorable to Piquet, the evidence as a whole demonstrates no

33

more than isolated or episodic instances of hostile conduct"); Gibson v. Fluor Daniel Services Corp., 281 Fed. Appx. 177, 179 (4th Cir. 2008) (magistrate judge correctly concluded that racist graffiti in the many portable toilets surrounding the large construction site in which plaintiffs worked, and the use of racially offensive derogatory remarks on site, were not sufficiently severe or pervasive to alter the conditions of employment or create an abusive atmosphere for purposes of a hostile work environment claim); Rios v. Buffalo and Fort Erie Public Bridge Auth., No. 04 Civ. 375, 2008 WL 657121, at *4 (W.D.N.Y. Mar. 7, 2008) (granting summary judgment for employer where plaintiff "identified only a handful of offensive cartoons, drawings, jokes and comments that occurred over a lengthy period of time").

### e. BOCES's Review of Plaintiff's Emails Was Not Causally Connected to Her Protected Speech

Plaintiff's emails were reviewed by Flood in connection with an ongoing investigation in April 2006 relating to a concern that Plaintiff was making inappropriate use of BOCES computers to conduct outside business at the expense of her BOCES responsibilities.  Plaintiff has not offered any evidence suggesting a contrary motive or that this investigation

34

was undertaken in retaliation for her allegedly protected

activity.  It is also temporally and causally remote to the

Plaintiff's FOIL request.  Plaintiff also failed to show that

Smith or McHale were involved in the April 2006 review of her

emails.

### f. Plaintiff's Inability to Obtain Summer Work Was Not Causally Connected to Her Protected Speech

Plaintiff has conceded that she was told that the

reason she was denied a position in the 2006 summer school

program was because high school students were not enrolled in

the program.  In fact, none of the high school social workers

were given positions in the summer school program in 2006.  In

the absence of any evidence to challenge the stated reasons for

the denial, Plaintiff cannot establish a causal link between her

purportedly constitutionally protected speech in September 2005

and the 2006 denial of a summer school position.

Plaintiff also has claimed that she was denied

additional summer hours to perform student intakes.  Of the six

high school social workers, only two were given the extra hours.

Plaintiff offers no explanation why she or any of the other

social workers were denied the additional hours and, in fact,

Plaintiff does not know who made the decision as to who would work the additional hours.  Thus, the denial of these additional hours has not been causally linked to Plaintiff's allegedly protected speech.

Plaintiff has also not established how any of the individual defendants were involved in these summer work decisions.

### g. Plaintiff's Transfer Was Not Causally Connected to Her Protected Speech

There is no dispute that Plaintiff was transferred from her position in BOCES's Flannery High School to Chester Learning Academy in December 2006.  When advised of the transfer, Plaintiff did not inquire into the reason(s) for the move.

An inference of retaliation is not appropriate when more than a year passes between the allegedly protected speech and the adverse employment action.  See Contes v. Porr, 345 F. Supp. 2d 372, 383 (S.D.N.Y. 2004) (listing cases holding that the passage of four months or more between protected conduct and adverse action does not support causation); see also Miller v.

Kempthorne, 357 Fed. Appx. 384, 386-87 (2d Cir. 2009) (a gap of
more than one year "falls well beyond that contemplated by this
Court as giving rise to" a retaliatory inference); Butler v.
Raytel Med. Corp., 150 Fed. Appx. 44, 47 (2d Cir. 2005) (one
year gap between protected activity and termination insufficient
to create inference of retaliation).

        Plaintiff has not refuted BOCES's legitimate,
performance-based reasons for the transfer.  McHale requested
Plaintiff's transfer in writing to Stroka on December 4, 2006.
The articulated reasons for the transfer were Plaintiff's
undermining of BOCES administration, creation of an
uncomfortable working environment for her co-workers, parent
complaints regarding Plaintiff, and Plaintiff's stated lack of
comfort in working in the high school.  Plaintiff offers no
evidence suggesting that any of these stated reasons were
inaccurate or retaliatory.

        Plaintiff also fails to establish how Flood or Smith
was involved in this decision or that McHale did anything other
than make a recommendation.  In fact, Smith was no longer
employed by BOCES at the time this event occurred.  Further,
there is no evidence establishing that Flood or McHale made the

37

decision to transfer Plaintiff.  Therefore, any claim arising out of this incident is dismissed as against the individual defendants.

Plaintiff's allegations of retaliatory animus are not sufficient to establish a causal link between her protected conduct, the FOIL request, and many of the adverse actions she claims to have suffered, namely admonishment over confidentiality concerns, removal from a speaking engagement, denial of summer work, and her transfer to a new school. Without causation, Plaintiff's retaliation claims stemming from these alleged adverse actions are dismissed.  Furthermore, the admonishments Plaintiff received from Smith at the October 14, 2005 meeting and in the November 8 Letter, while indicating a retaliatory animus held by Smith, did not constitute adverse employment actions motivated by her FOIL request.  Finally, Plaintiff's claim stemming from McHale's alleged failure to punish Plaintiff's co-workers for degrading remarks cannot establish a retaliation claim.


**VI.  <u>Qualified Immunity Is Denied</u>**

Here, the individual defendants argue that they are entitled to qualified immunity because Plaintiff has not established that a violation of her First Amendment rights has occurred. As concluded above, that argument is unavailing with regard to the denial of Plaintiff's application for a part-time after-school counseling position in alleged retaliation for Plaintiff's FOIL request.

Defendants further argue that Plaintiff cannot show that they were personally involved in the underlying adverse actions. However, according to McHale, Smith was personally involved in the denial of the part-time after-school counseling position. Although McHale testified that Smith was responsible for the decision to deny Plaintiff the part-time P.M. hours position, a reasonable jury may conclude that he was personally involved in the decision, particularly in light of the evidence that he ordinarily made such recommendations. Therefore, a triable issue remains.

39

## VII. <u>Conclusion</u>

For the foregoing reasons, the Defendants' motion for summary judgment is granted in part and denied in part.

It is so ordered.

New York, NY
August /₂ , 2011

ROBERT W. SWEET
U.S.D.J.

40